**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**HOLLY NEIL BENNETT,**

      **Petitioner,**

v.                                        **Civil Action No. 1:10cv05**
                                       **Criminal Action No. 1:08cr78-2**
**UNITED STATES OF AMERICA,**      **(Judge Keeley)**

      **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

### I. INTRODUCTION

On January 8, 2010, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Dkt.# 799). The Government was ordered to answer on January 12, 2010, (Dkt.# 803) and filed its response on February 10, 2010. (Dkt.# 821). Petitioner replied on February 24, 2010. (Dkt.# 822). On November 29, 2010, petitioner filed a motion to amend his § 2255 petition. (Dkt.# 858). The Government filed a response in opposition on December 29, 2010. (Dkt.# 860). Petitioner then filed a motion requesting an extension of time in which to reply, on January 10, 2011. (Dkt.# 861). By Order entered on January 11, 2011, petitioner's request for an extension was granted. (Dkt.# 867). Petitioner's reply was filed on February 10, 2011. (Dkt.# 867).

### II. FACTS

**A. Conviction and Sentence**

On November 13, 2008, petitioner signed a plea agreement by which he agreed to plead guilty to Count Sixty-Five of the indictment, maintaining a drug-involved premise, in violation of Title 21, United States Code, § 856(a)(2). The petitioner waived his right to appeal and to

collaterally attack his sentence. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 12. The above paragraph not withstanding, the defendant will retain his appellate rights and rights to collaterally attack his conviction only with respect to any sentence imposed above the applicable Guideline range using a base offense level 33 or higher. This reservation of rights is designed to ensure that the United States and the defendant retain the benefits of the plea agreement. It is not intended to represent the defendant's estimation of what an appropriate or reasonable sentence would or should be. Nor does this reservation of rights prevent the defendant from arguing for a sentence below the applicable advisory total offense level. The United States will retain its appellate rights with respect to any sentence imposed.

(Dkt.# 382 at 4).

On December 15, 2008, the petitioner entered his plea in open court. (Dkt.# 819). Petitioner was 34 years old, a high school graduate with one semester of college. (Id. at 8). Petitioner testified that he could read, write and understand the English language. (Id. at 8 - 9). He denied any physical or mental disability that might affect his ability to fully participate in the proceedings; and denied any recent illegal drug or alcohol use, but admitted to having taken two over the counter medications within the previous 24 hours: Ceboxin [sic] and ibuprofen. (Id. at 9 - 11). Petitioner testified that he understood and agreed with all the terms and conditions of the plea agreement. (Id. at 13 - 17). The Court specifically asked petitioner if he understood that under the terms of the waiver of his appellate and post-conviction relief rights, he only retained those rights if the sentence he ultimately received was based on a base offense level of 33 or higher, and petitioner said that he did. (Id. at 14 - 15 and 32 - 33). The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 22 - 27). During the plea hearing, the Government presented the testimony of Lieutenant Brian Purkey, Commander of the Harrison-Lewis County Drug and Violent Crimes Task Force, to establish a factual basis for the plea. (Id. at 27 - 30). The petitioner did not contest the factual basis

2

of the plea, and specifically stated that he agreed with the witness' testimony. (Id. at 31).

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Count 65 of the indictment. (Id.). The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id. at 20 and 32). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id. at 19). The petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. (Id. at 16 - 17). Finally, petitioner said he was in fact guilty of the crime to which he was pleading guilty. (Id. at 20 - 21).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, and that the petitioner understood the consequences of pleading guilty, including the ultimate determination of sufficient career criminal history points that could affect his sentence. Further, the Court determined that petitioner understood that the waiver of his appellate and collateral attack rights would apply if his base offense level was 32 or lower. (Id. at 32 - 33). The petitioner did not object to the Court's finding.

On April 2, 2009, the petitioner appeared before the Court for sentencing. After considering several factors, including the circumstances of both the crime, the defendant's status as a career offender, and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of 170 months imprisonment, followed by three years supervised release. (Dkt.# 812 at 28 - 29). The Court recommended petitioner participate in the Bureau of Prison's ("BOP") 500 hour residential substance abuse program and that petitioner receive a full psychiatric work up and evaluation. (Id. at 28). The Court noted that because petitioner's base offense level was found to be 32, he did not retain his appellate and collateral attack rights. (Id. at 30).

**B. Appeal**

Petitioner did not pursue a direct appeal.

**C. Federal Habeas Corpus**

**Petitioners' Contentions (Dkt.# 799)**

Petitioner raises two grounds in his petition:

1) The District Court erroneously enhanced his sentence by employing 2D1.1(c) factors to establish his base offense level; and

2) the District Court erroneously used a property offense as a drug offense, in order to impose a career offender sentence on him.

As relief, petitioner requests that the Court correct his "illegal sentence."

**Government's Response (Dkt.# 821)**

Petitioner waived his collateral attack rights, incident to his plea agreement, and therefore his § 2255 motion should be dismissed.

The issues raised in petitioner's motion are merely claims that there was a misapplication of the sentencing guidelines. It is well settled that sentencing issues generally cannot be raised in a § 2255 motion, unless a challenge is being raised that a sentence is in excess of the maximum authorized by law. Because petitioner's sentence is well within the maximum, his motion should be dismissed.

Petitioner's claims are procedurally defaulted, as they could have been raised on direct appeal. Petitioner has neither demonstrated cause nor shown prejudice for not so raising them, and thus his motion should be dismissed.

Petitioner's claims have no merit.

**Petitioner's Reply (Dkt.# 822)**

Petitioner reiterates the claims previously made in his § 2255 motion, and for the first time, raises a Third Ground, a claim of ineffective assistance of counsel against counsel, for not diligently pursuing Grounds One and Two pre-trial. He contends that counsel's ineffectiveness in the pre-trial stages of representation are the cause for "petitioner's failure to challenge that which he now attacks now - further [sic] counsel's injury to petitioner shall be deemed as being 'prejudice[.]'" (Dkt.# 822 at 3).

**Petitioner's Motion for an Amendment Pursuant to 28 U.S.C. § 2255 (Dkt.# 858)**

Petitioner raises a Fourth Ground, again alleging ineffective assistance of counsel, now after the plea, for failure to challenge the two issues he raised in his August 11, 2010 Clarification of Judgment on PSR: a mistake in the computation of his offense level and an "elementary mathematical calculation on the PSR," which he contends resulted in a mistake in the computation of the amount of his drug relevant conduct. He attaches a copy of his August 11, 2010 "Clarification of Judgment on P.S.R." (Dkt.# 845) where he first raised these issues, asserting that he is entitled to the lower base offense level set forth in the new crack guidelines established in the Fair Sentencing Act of 2010.

**Government's Objection to Motion to Amend Motion to Vacate Under § 2255 (Dkt.# 860)**

Petitioner's amended motion should be dismissed because he waived his collateral attack rights. Furthermore, because the issues raised in his "Clarification of Judgment on P.S.R. are meritless, counsel cannot be found ineffective for failing to raise them. Likewise, petitioner's motion to amend the Clarification of Judgment on P.S.R., alleging that under the Fair Sentencing Act of 2010, his guideline base offense level should be reduced also lacks merit. Petitioner's base offense level was determined by the career offender provision of the guidelines. Again, counsel was not

5

objectively unreasonable for failing to raise the issue.

**D. Recommendation**

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his sentence. Further, petitioner's post-plea claims of ineffective assistance of counsel, although falling outside of the waiver, have no merit.

### III. ANALYSIS

**A. Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**B. Waiver**

[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant

7

entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the

proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

9

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (4th Cir. 2007) indicates that when the District Court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 819 at 14 - 15 and 32 - 33). Further, petitioner specifically testified that he understood that, incident to his plea agreement, in exchange for some of the Government's concessions, he was waiving his right to appeal his sentence or to collaterally attack the legality of the guilty plea and sentence, as long as it was within the maximum sentence of not more than twenty years and it was based on a base level determination of 32 or lower. (Id. at 16). Because petitioner was ultimately determined to be an career offender, his base offense level was 32 and he received a sentence of 170 months, or 14.16 years imprisonment. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner

knowingly and voluntarily waived the right to collaterally attack his conviction and sentence by filing this § 2255 motion, except for claims of ineffective assistance of counsel arising after the entry of the guilty plea. Thus, a review of petitioner's claims enumerated herein as Grounds One and Two are precluded, as is Ground Three, petitioner's claim that counsel was ineffective, prior to the entry of the plea, for not challenging Grounds One and Two.

However, a waiver analysis may not be dispositive of all of the issues in this petition. To the extent that petitioner has also raised an ineffective assistance of counsel claim arising after the entry of the plea, that is excepted from his waiver and will be given review.

## C. Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill

v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Pursuant to the waiver of appellate and post-conviction relief rights in his plea agreement, petitioner validly waived the right to bring any ineffective assistance of counsel claims occurring prior to the entry of his guilty plea. Therefore, petitioner's Ground Three claim that counsel was ineffective for failing to challenge his Grounds One and Two claims, is waived.

**Ground Four: Whether Counsel Was Ineffective at Sentencing for Failing to Challenge Mistakes in the Presentence Investigation Report.**

Petitioner contends that counsel's performance was deficient when he failed to challenge two errors in the PSR: a mistake in the computation of his offense level and an "elementary mathematical calculation on the PSR," which he contends resulted in a mistake in the computation of the amount of his drug relevant conduct. Petitioner argues that he is entitled to the lower base offense level set forth in the new crack cocaine guidelines established in the Fair Sentencing Act of 2010 ("FSA").

Petitioner's first argument is that his PSR should have reflected an adjusted offense level of 15, instead of 16, after the three level reduction for acceptance of responsibility. He contends that this error "went unnoticed by counsel," proving counsel's ineffectiveness.

A full review of the record reveals that the Offense Level Computation on page 27 of the PSR

shows petitioner's base offense level to be 18, with a two-level reduction for acceptance of responsibility and a third level reduction for timely acceptance, to be granted upon the motion of the Government. Although it is true that page 27 of the PSR reflects an Adjusted Offense Level of 16, instead of 15, after the three level reduction for acceptance of responsibility, the application of a Chapter Four Enhancement after that computation rendered the original base offense level moot, because, as petitioner is well aware, his offense level then became a 32, rather than the original 18. On the following page, the three level reduction for Adjustment for Acceptance of Responsibility was then applied to the offense level of 32, arriving at a Total Offense Level of 29. Moreover, counsel filed one objection to the PSR, for its suggestion[1] that petitioner be denied the third level for timely acceptance of responsibility. (Dkt.# 543 at 61). Counsel vigorously argued the objection at sentencing and after a brief debate, the Government capitulated and moved for the third level, and it was granted. (Dkt.# 812 at 12). Counsel's representation was effective and appropriate. Further, because petitioner received the third level, even if counsel had overlooked it, petitioner could not prove prejudice.

Petitioner's next claim is that counsel was ineffective for not challenging an alleged mistake in drug weight computation on page 25 [sic] of his PSR.[2] Petitioner's drug relevant conduct was found to be between 2 and 3 grams of cocaine base. Petitioner asserts that he was indicted on two

---

[1] On page 26 of the PSR, the probation officer noted that petitioner had violated his post-plea bond by testing positive for cocaine and being arrested for third offense domestic battery. Therefore, she opined, "the Court may find the defendant does not qualify for this adjustment [the third level reduction for acceptance of responsibility] based on his failure to withdrawal [sic] from criminal conduct following his guilty plea in the instant offense." (Dkt.# 543 ¶ 125 at 26). Although she noted the possibility of the third level reduction in the Offense Level Computations on the next page as "-1" she did not actually subtract it from the Adjusted Offense Level there, leaving the adjusted offense level number as a "16" instead of a "15." (Id. ¶ 134 at 27). However, after the application of the Chapter Four Enhancement for a career offender, the three level reduction was applied appropriately on the next page, reducing the new offense level of 32 to a 29.

[2] The drug weights and amounts of drug relevant conduct are discussed on pages 25 - 27 of the PSR.

drug sales, Count 59 and Count 60, for .37 grams and .84 grams, respectively, of cocaine base. Therefore, he argues, because this only totals 1.21 grams, instead of the drug relevant conduct amount of between 2 and 3 grams, according to the new crack guidelines pursuant to the Fair Sentencing Act of 2010, his original base level should have been sixteen, and after a three-level reduction for acceptance of responsibility, his adjusted offense level should have been thirteen.

Petitioner's argument has no merit. Petitioner himself stipulated to the amount of his drug relevant conduct in order to obtain the reciprocal benefits of his plea agreement:

> 9. Pursuant to Sections 6B1.4 and 1B1.3 of the Guidelines, the parties hereby stipulate and agree that, between in or about April 2008, until the date of the return of the indictment, September 4, 2008, at or near Clarksburg, Harrison County, West Virginia, the defendant, aided and abetted by another person . . . knowingly and intentionally made available for use, with and without compensation, that place for the purpose of unlawfully storing, distributing and using a controlled substance, that is cocaine base, also known as "crack." **The parties further stipulation [sic] that defendant's relevant conduct is at least two (2) gram [sic] but less than three (3) grams of cocaine base but that the appropriate base offense level (before any reduction for acceptance of responsibility) is 32 because defendant qualifies as a "career offender" under § 4B1.1 of the Guidelines** . . .

(Dkt.# 382 at 4)(emphasis added).

Moreover, even if petitioner had not stipulated to the amount of his drug relevant conduct, the FSA has no application to his situation at this time. Petitioner was sentenced on April 2, 2009. The FSA was not signed into law until August 3, 2010. This Court only has jurisdiction to amend a sentence where a guideline has been implemented and made retroactive. U.S.S.G. Manual § 1B1.10 (2009); 18 U.S.C. § 3582(c)(2). The FSA has not been made retroactive at this time, therefore petitioner is not entitled to any reduction in his base offense level under it. Petitioner has neither proven ineffectiveness nor prejudice, thus he has failed to carry his burden under Strickland.

### IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's §2255 motion (Dkt.# 799) and his amended §2255 motion (Dkt.# 858) be **DENIED and dismissed with prejudice** from the docket.

Therefore, the following should be **DENIED** as moot:

**A**. petitioner's August 11, 2010 motion for clarification of judgment on PSR (Dkt.# 845); and

**B**. petitioner's November 24, 2010 motion for an amendment to the clarification of judgment on the PSR. (Dkt.# 856).

Within **fourteen (14) days** after being served with a copy of this opinion/report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record as applicable.

DATED: March 1, 2011

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE